[Cite as *State v. Thompson*, 2016-Ohio-5571.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2015-P-0034** |
| - vs - | : | |
| MICHAEL THOMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Kent Division, Case No. 2015 CRB 00261K.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Drnjevich,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Michael Thompson,* pro se, 221 Spaulding Drive, Apt. 3, Kent, OH 44240 (Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Michael Thompson, pro se, appeals his conviction, following a bench trial, in the Portage County Municipal Court, Kent Division, of possession of marijuana, a minor misdemeanor. The principal issue is whether appellant's conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm.

{¶2} At trial, Officer Josh Nelson of the Kent Police Department testified that on February 12, 2015, at about 4:00 p.m., he was parked in his cruiser in a driveway

between two apartment buildings running license plates and checking for speeders. At that time he saw appellant's vehicle, a white Pontiac Grand Am, coming out of a parking lot across the street. About one week earlier, the Kent Police Department received a tip from a female who reported that appellant was selling drugs. She provided appellant's address and the description and license plate of his car.

{¶3} The car that appellant was driving matched the description and license plate provided by the tipster. Officer Nelson also saw there was a passenger in the front passenger seat. The officer ran the license plate and discovered that the car was registered to appellant and that the plates were expired. The officer then pulled out and followed appellant and his passenger in order to conduct a traffic stop.

{¶4} Appellant pulled into a restaurant parking lot. The officer followed him into the parking lot and then activated his overhead lights.

{¶5} Officer Nelson walked over to appellant's car and said he stopped him because his license plates were expired. Appellant said that was wrong. The officer asked appellant for his registration and showed him the plates were expired. After checking his registration, Officer Nelson asked appellant where they were going. Appellant said they were late and in a hurry because he needed to take the female seated in the front passenger seat to a doctor's appointment. The officer testified this was strange because appellant pulled into the parking lot before he initiated the stop and there was no doctor's office there.

{¶6} Officer Nelson asked the passenger, Klarissa Wagner, for her identification. He ran it through L.E.A.D.S. and found she had an outstanding arrest warrant from Stow. Officer Nelson then asked appellant for consent to search his car

2

and he refused. The officer returned to his cruiser and radioed for a canine officer to come to the scene to check appellant's car for drugs. Ms. Wagner was handcuffed due to her outstanding warrant and placed in Officer Nelson's cruiser. Appellant was placed in the cruiser of Officer Bowen, another Kent Police Officer who provided backup.

{¶7} About ten minutes later, Officer Ted Bell of the Stow Police Department arrived with his certified canine partner Mingo. Officer Bell testified that, at Officer Nelson's request, he had Mingo check around appellant's car for the odor of drugs. Mingo alerted to near the door seam at the driver's side, indicating she detected the odor of drugs.

{¶8} Officer Bell advised Officer Nelson regarding the results of the sniff. Officer Nelson told appellant that the canine alerted and asked him why the dog would alert to his vehicle. Appellant said, "there's probably marijuana seed on the floor."

{¶9} Officer Nelson testified that once Mingo alerted to the vehicle, he and Officer Bell searched it. Appellant's Pontiac was a two-door sedan. Officer Nelson searched the driver's side and Officer Bell searched the passenger's side. Officer Nelson searched the driver's seat first and then moved the driver's seat up. He lifted the floor mat behind the driver's seat and saw a baggie of marijuana under the mat near where Mingo had alerted. Officer Nelson identified the baggie of marijuana in court.

{¶10} Officer Bell said he searched Ms. Wagner's purse that was on the passenger side of the car and found a metal spoon inside. He said the spoon had burn marks on it, which, he said, is common with spoons used to dissolve heroin or prescription pills.

3

{¶11} Officer Nelson talked to Ms. Wagner about the spoon. At first she said she used it to eat. When he asked her why there were burn marks on the spoon, she said a friend must have put it in her purse.

{¶12} Officer Nelson cited appellant for possession of marijuana, a minor misdemeanor, but decided to give him a warning rather than a citation for the expired plates. Officer Bowen drove him to the Kent Police Department for booking. Officer Nelson transported Ms. Wagner to the Stow Police Department to be booked for possession of drug abuse instruments and also to be served with her outstanding warrant. As Officer Nelson was driving Ms. Wagner to the Stow Police Department, Officer Bowen called him and said that appellant told him that when Officer Nelson initially stopped them in the restaurant parking lot, Ms. Wagner shoved syringes and spoons down her pants. When Officer Nelson told Ms. Wagner that appellant said she put these instruments down her pants to conceal them, she admitted it. However, she never said the marijuana belonged to her. Ms. Wagner ultimately pled guilty to possession of drug abuse instruments in the Stow Municipal Court.

{¶13} After the state rested its case, appellant called Klarissa Wagner as his only witness. On direct, she simply said she put marijuana in appellant's car that day; however, on cross, her story unraveled. She said that when Officer Nelson stopped them, she had marijuana, three syringes, and two spoons in her purse. She said she was using heroin at that time and used the syringes in her purse to shoot up. She said she wanted to hide these items from the police so she put the needles and spoons in her pants and "tossed [the marijuana] back so it could have went, you know, anywhere in the back." She said she does not know how the marijuana got under the floor mat

4

behind the driver's seat. Nor did she explain why she would conceal needles and spoons on her person, but take the risk of throwing the drugs in the back where anyone could see them when she could just as easily have hid the marijuana with the other items.

{¶14} Ms. Wagner said she told Officer Nelson that she was late for a doctor's appointment and they were in a hurry to get there, but she admitted appellant drove to the restaurant to get lunch. Once she realized this was inconsistent with her story about them being in a hurry, she reversed course and said he only drove there to "order" lunch and that he would pick it up after her appointment. However, later in her testimony she said the doctor's office was so far, the bus would not take her there. She did not say why they did not just simply go to lunch after the appointment. Further, she did not offer any doctor's note or any other document showing that she had a doctor's appointment that day.

{¶15} Ms. Wagner was also unclear about the marijuana she said was hers. She was unsure how it was packaged. She said it was only 3.5 grams of marijuana, although Officer Nelson said it was 21 grams. And, she refused to testify who she bought it from, even after the court ordered her to do so.

{¶16} In the state's rebuttal case, Officer Nelson said that from the time he determined appellant's license plates were expired, he saw there was a passenger in appellant's car. He never lost visual contact with the vehicle and never saw any furtive movements by either occupant. Specifically, he said he did not see Ms. Wagner throw anything in the back seat.

**{¶17}** Following the trial, the trial court found appellant guilty of possession of marijuana, a minor misdemeanor; fined him $150; and suspended his driver's license for six months.

**{¶18}** Appellant appealed the trial court's judgment, and the trial court stayed execution of his sentence. In his brief, appellant does not assert any assignments of error. Instead, he presents a one and one-half page rambling argument that briefly mentions five issues. While it is not the role of this court to construe various issues raised as assignments of error, in the interests of justice we shall address the issues mentioned in the brief.

**{¶19}** First, appellant does not challenge the sufficiency of the evidence to support his conviction of possession of marijuana; rather, he challenges only the manifest weight of the evidence.

**{¶20}** A court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The court determines whether, in resolving conflicts in the evidence and deciding witness credibility, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id*. The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction. *Id*. Witness credibility rests solely with the finder of fact, and an appellate court is not permitted to substitute its judgment for that of the fact-finder. *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "The [trier of fact] is entitled to believe all, part, or none of the testimony of any witness." *State v. Archibald*, 11th Dist.

6

Lake Nos. 2006-L-047 and 2006-L-207, 2007-Ohio-4966, ¶61. The role of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. *Thompkins, supra,* at 390 (Cook, J., concurring). If the evidence is susceptible to more than one interpretation, an appellate court must interpret it in a manner consistent with the verdict. *State v. Banks*, 11th Dist. Ashtabula No. 2003-A-0118, 2005-Ohio-5286, ¶33.

{¶21} Appellant argues that the municipal court was prejudiced against him and his witness as evidenced by the judge's finding on the record that she found the officers' testimony to be credible but that Ms. Wagner's testimony was not. However, this finding shows the court performed its duty to determine the credibility of the witnesses and does not reflect bias.

{¶22} The only alleged inconsistency noted by appellant is that, while Officer Nelson testified he found the marijuana in the back under the floor mat, Officer Bell, the canine officer, testified the marijuana was found in the back of the car. However, Officer Bell searched only the passenger side of the car, while Officer Nelson searched the driver's side and found the marijuana. Thus, it was understandable that Officer Bell was unaware exactly where in the back of the car Officer Nelson found the drugs. In any event, since both officers said that Officer Nelson found the marijuana in the back of the car, their testimony on this point was consistent.

{¶23} The trial court was entitled to find, as it did, that the officers' testimony was credible while that of Ms. Wagner was not, and nothing in the record suggests that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

7

{¶24} Second, appellant argues that the trial court, prosecutor, and public defender attempted to intimidate Ms Wagner to get her to recant her testimony that the marijuana belonged to her. However, appellant is referring to the court's efforts to advise her of her Fifth Amendment right not to incriminate herself. After Ms. Wagner testified she had marijuana in her purse, the court interrupted the proceedings to advise her that it appeared she was going to admit possessing marijuana and that by doing so she would be admitting a crime. After the court advised Ms. Wagner that she had a right not to incriminate herself, she said she wanted to proceed. Then, at the prosecutor's request, the court advised Ms. Wagner that if it was proven she was not telling the truth under oath, she could be committing perjury, another criminal offense. Ms. Wagner said she understood.

{¶25} Later, when the prosecutor asked Ms. Wagner about the purpose of the syringes in her purse, appellant objected on the ground that the prosecutor was "incriminating" the witness. The court then asked the witness if she would like to exercise her Fifth Amendment privilege and remain silent and the witness said she did not want to talk right now.

{¶26} During a brief recess, the court had a public defender advise Ms. Wagner regarding her rights. The trial court said on the record that, after talking to the public defender, the court was confident the public defender explained Ms. Wagner's constitutional rights and privileges to her. After the recess, when the court asked Ms. Wagner if she wanted to continue testifying or exercise her Fifth Amendment privilege, the witness said she wanted to testify.

8

{¶27} Later in her testimony, when the prosecutor asked Ms. Wagner where she got the marijuana, Ms. Wagner refused to testify. The court allowed her to assert her Fifth Amendment privilege as to that question only, but allowed her to testify as to other matters.

{¶28} Thus, there is no evidence the court, prosecutor, or public defender attempted to intimidate Ms. Wagner to recant her testimony that the marijuana belonged to her. To the contrary, the court simply informed her of her privilege against self-incrimination and enlisted the public defender to also advise her of her rights. In any event, even if there was error, any error would be harmless beyond a reasonable doubt because the witness never recanted her testimony that the marijuana was hers.

{¶29} Third, appellant states that the traffic stop and search were unlawful; however, he does not present any argument in support, in violation of App.R. 16(A)(7). For this reason alone, the argument (such as it is) lacks merit.

{¶30} More importantly, appellant never filed a motion to suppress evidence. Crim.R. 12(B) provides: "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial: * * * (3) Motions to suppress evidence * * *." It is well settled that the failure to file a pretrial motion to suppress evidence on the grounds that it was illegally obtained constitutes a waiver of the error. *State v. Moody*, 55 Ohio St.2d 64, 65 (1978); *State v. Jones*, 8th Dist. Cuyahoga No. 92820, 2009-Ohio-5701, ¶38 ("Crim.R. 12(B) requires a defendant to raise any objection to the admissibility of unconstitutionally obtained evidence in a pretrial motion to suppress.").

**{¶31}** It is undisputed that appellant never filed a motion to suppress evidence obtained as a result of the stop and search of his vehicle. As a result, he waived any objection to the introduction of the evidence at trial.

**{¶32}** Fourth, appellant argues the marijuana was not lab tested before being admitted in evidence. While his argument is far from clear, he appears to be arguing the trial court abused its discretion in admitting the marijuana in evidence. The admission or exclusion of evidence lies within the sound discretion of a trial court, and a reviewing court may not disturb evidentiary decisions without an abuse of discretion. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶43, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

**{¶33}** As a preliminary matter, appellant did not object to the admissibility of the marijuana at trial. This issue is thus waived on appeal. *Awan, supra,* at 122.

**{¶34}** In any event, even if the issue was not waived, it would lack merit. Pursuant to R.C. 2925.51, the state may establish prima-facie evidence of the identity of a controlled substance through laboratory testing. However, Ohio courts have held that lab testing is not always necessary to prove the identity of a substance. For example, the Supreme Court of Ohio has held that police officers trained and qualified may testify that a substance is marijuana without a laboratory test as long as there is a sufficient foundation laid to establish familiarity with the drug. *State v. Maupin*, 42 Ohio St.2d 473 (1975), paragraph two of the syllabus. In addition, the Ohio Supreme Court has held that a lay witness who is a drug user can establish his or her competence to express an opinion on the identity of a controlled substance if a sufficient foundation for the testimony is established. *State v. McKee*, 91 Ohio St.3d 292 (2001), syllabus

{¶35} Officer Nelson testified that he successfully completed training in marijuana odor detection with the Portage County Drug Task Force and that, based on his training and experience, he is able to determine if a substance is marijuana. He testified that when he lifted the floor mat in the rear of appellant's car, he found a baggie containing marijuana. He testified that when he found the baggie, he knew it contained marijuana because "[y]ou could smell it outside of this outer plastic bag. Marijuana has a very distinct odor. Also, by looking at it I could see that it was marijuana."

{¶36} Further, appellant's witness, Ms. Wagner, testified: (1) that she smokes marijuana and has a supplier from whom she purchases marijuana; (2) that the baggie she tossed in the back of appellant's car contained marijuana; (3) that it looked like about four grams of what she referred to as "good weed;" (4) that she bought it from her supplier for $35; and (5) that the baggie containing green vegetable matter that was marked as an exhibit at trial was in fact marijuana.

{¶37} Based on the foregoing evidence, the issue is waived, but even if it was not, the trial court would not have abused its discretion by admitting the marijuana in evidence.

{¶38} Fifth and last, appellant argues his statutory speedy trial rights were violated because he was tried after the expiration of the 30-day time limit for a minor misdemeanor. As a preliminary matter, we note that appellant never raised this issue in the trial court. He never filed a motion to dismiss the citation on speedy trial grounds and, even at trial, he never raised the issue. "Without question speedy trial rights may be waived." *State v. McDonald*, 4th Dist. Highland No. 96CA913, 1997 Ohio App. LEXIS 4340, *5 (Sep. 9, 1997). A defendant's failure to raise this issue in the trial court

waives any error. *State v. Glazer*, 111 Ohio App.3d 769, 772 (5th Dist.1996), citing *State v. Dumas*, 68 Ohio App.3d 174, 176 (10th Dist.1990). In *Dumas*, the Tenth District stated:

> **{¶39}** R.C. 2945.73(B) * * * provides:
>
> **{¶40}** Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.
>
> **{¶41}** As is apparent here, the speedy-trial provisions are not self-executing, but, rather, must be asserted by a defendant in a timely fashion to avoid such rights being waived. *Partsch v. Haskins*, 175 Ohio St. 139 (1963), and subsequent related cases uniformly support this proposition. * * * *Dumas, supra*.

**{¶42}** We therefore hold appellant waived any objection based on a violation of the speedy trial statute.

**{¶43}** In any event, even if the issue was not waived, the argument would lack merit. Pursuant to R.C. 2945.71(A), a person charged with a minor misdemeanor must be brought to trial within 30 days after an arrest or service of summons. Pursuant to R.C. 2945.72(H), a trial court may extend a trial past the speedy trial limit for the period of any reasonable continuance granted on the state's motion ("The time within which an accused must be brought to trial * * * may be extended * * * by * * * the period of any reasonable continuance granted other than upon the accused's own motion."). The trial date may also be extended for any period occasioned by the neglect or improper act of the defendant. R.C. 2945.72(D).

**{¶44}** Appellant was served with the citation on February 12, 2015. He thus had to be tried by March 14, 2015. The trial was set for March 9, 2015. On March 9, 2015, the state filed a motion for a continuance to obtain the video of the traffic stop. As of

12

that date, 25 days had passed.  The court granted the motion and continued  the trial to March 23, 2015.

**{¶45}**  Ohio appellate courts, including the Ohio Supreme Court, have held that reasonable continuances granted to the state are not counted against the state for speedy trial purposes as long as legitimate grounds for the continuance are provided. *State v. Hess*, 5th Dist. Stark No. 2003CA00348, 2004-Ohio-6820, ¶24 (continuance of trial at state's request, due to DNA testing and unavailability of victim due to pregnancy complications, were not attributable to state for speedy trial purposes since grounds for continuance were reasonable); *State v. Barnett*, 12th Dist. Fayette No. CA2002-06-011, 2003-Ohio-2014, ¶11-12 (continuance granted to state tolled speedy-trial time in prosecution for rape since absence of one of state's key witnesses and lack of completion of DNA testing providing reasonable grounds for granting continuance); *State v. Myers*, 97 Ohio St.3d 335, 342 (2002) (prosecutor's request for continuance to allow expert with 12-week backlog of cases to test foreign hair found on murder victim's body was not unreasonable and could not be charged against state for speedy trial purposes).

**{¶46}**  Here, the state moved for a continuance to allow it to obtain and review a video of the stop.  The state had the right, and even the duty, to review the video prior to trial.  Since appellant did not raise the speedy trial issue below, he did not challenge the reasonableness of the state's request for a continuance.  Thus, appellant did not offer any evidence that the state's motion was not made in good faith.  In these circumstances, the continuance was not attributable to the state for speedy trial purposes.

13

{¶47} On the date scheduled for trial, appellant failed to appear and the trial was reset to April 2, 2015. The additional ten days after March 23, 2015 are attributable to appellant due to his neglect or improper act in failing to appear. The trial proceeded on April 2, 2015, 19 days after the statutory 30-day time limit.

{¶48} Thus, even if the issue was not waived, appellant's right to a speedy trial was not violated.

{¶49} For the reasons stated in this opinion, the purported assignment of error lacks merit and is overruled. It is the order and judgment of this court that the judgment of the Portage County Municipal Court, Kent Division, is affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶50} I concur with the majority's well-reasoned opinion. I write separately regarding the matter of appellant's arguments concerning the alleged violation of his statutory speedy trial rights. The majority is correct that speedy trial provisions are not self-executing and they can be waived. In this case appellant failed to raise this matter in the trial court, effectively waiving any objection.

{¶51} The majority goes on to note that—even if appellant had not waived his speedy trial rights—the result would be the same as a trial court may grant a reasonable extension of the speedy trial limit under R.C. 2945.72(H). Extensions under R.C.

14

2945.72(H) have been granted for a variety of reasons. *State v. Nesser*, 2d Dist. Clark No. 2013 CA 21, 2014-Ohio-1978 ¶34-36 (Superstorm Sandy); *State v. Talley*, 6th Dist. Lucas No. L-07-1153, 2008-Ohio-6807, ¶15 (snow emergency); *State v. Strauss,* 11th Dist. Portage No. 2010-P-0035, 2011-Ohio-869, ¶14 (unavailability of witness due to medical emergency); *State v. Mailey,* 1st Dist. Hamilton No. C-050590, 2006-Ohio-3347, ¶20 (scheduling conflict due to jury trial).

**{¶52}** However, in this case the continuance was requested so that the state could obtain the video of the traffic stop. It is reasonable to grant an extension of a defendant's statutory speedy trial rights due to events that are outside the control of the court or the parties. However, it is not reasonable to grant such an extension so that the state can perform regular and routine case-preparation—such as obtaining a video of a traffic stop. One would assume that the state would have performed this routine function prior to trial.

**{¶53}** The state has a duty to exercise due diligence and prepare for trial within the statutory time period. *State v. Jordan,* 10th Dist. Franklin No. 90AP-660, 1991 Ohio App. LEXIS 775, *7 (Feb. 21, 1991), citing *State v. Reeser,* 63 Ohio St.2d 189, 191 (1980). Having video evidence, taken on the date of arrest, prepared for trial within the statutory time period constitutes due diligence. Absent appellant's waiver, a continuance under these circumstances would not be reasonable.