[Cite as *State v. Johnson*, 2017-Ohio-2932.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-103** |
| BRIAN A. JOHNSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 000378.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brian A. Smith,* 755 White Pond Drive, Suite 403, Akron, OH 44320 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Brian A. Johnson, appeals his convictions and sentence for Rape, Aggravated Burglary, and Burglary, following a bench trial in the Lake County Court of Common Pleas. The issues to be determined by this court are whether a Rape conviction is supported by the weight of the evidence when the victim gives conflicting statements about events, including her past relationship with the defendant, and whether the trial court errs in issuing a sentence when it does not weigh

the victim's credibility issues and considers the defendant's past convictions for non-sexual offenses. For the following reasons, we affirm the judgment of the lower court.

{¶2} On May 31, 2016, Johnson was indicted by the Lake County Grand Jury for Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2); Aggravated Burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1); Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2); and Robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2).

{¶3} A bench trial was held on July 25 and 26, 2016. The following testimony was presented:

{¶4} Tina Shaw, a dispatcher with the Wickliffe Police Department, testified that on March 29, 2016, at around 11:17 p.m., L.L. entered the police department lobby and stated that she had been sexually assaulted. L.L. looked like she had been crying and was "scared." Shaw contacted the Willoughby Hills Police Department, since the incident took place in its jurisdiction, and asked officers to come to Wickliffe since L.L. seemed "too upset to drive."

{¶5} Patrolman Brett Peeples of the Wickliffe Police Department met with L.L. at the police department and could tell she "had been crying," was "pretty upset," and was "hyperventilating a little bit."

{¶6} Patrolman Randy Mullenax of the City of Willoughby Hills Police Department met with L.L., and observed that she was "crying very heavily," "very excited" and "hysterical." L.L. stated that Johnson had come over to her house to buy and smoke marijuana, and had "forced himself on her and he raped her." Mullenax noted bruises on L.L.'s leg and arm, which he photographed.

2

{¶7} Mullenax testified that L.L. initially denied having prior sexual contact with Johnson. In a later interview, L.L. indicated that they had past consensual sexual contact.

{¶8} L.L., who was 19 at the time of her testimony, became friends with Johnson on Facebook and began to meet with him in person in the summer of 2015. The two sent pictures via social media, including pictures of them smoking marijuana. L.L. sent Johnson nude pictures because he requested them and she was "proud of [her] body." After L.L. received text messages from the mother of Johnson's child, she communicated to Johnson that she did not want to have a relationship or sexual activity with him because she did not want to be a "home wrecker."

{¶9} L.L. testified that she and Johnson had performed consensual oral sex on each other in the past. The two had also had an "incident" in the winter of 2016 where Johnson attempted intercourse and afterward L.L. told him she was not comfortable. She stopped talking to Johnson in February 2016 because she had difficulty communicating her feelings with him. In March 2016, Johnson made statements to L.L. via Snapchat about wanting to engage in sexual acts with her. She responded, "I'm sorry I just feel like I don't want to do that anymore."

{¶10} On the night of March 29, 2016, L.L. agreed that Johnson could come to her apartment. She testified that she did not want to have sex with him, noting that she was on her period and in pain. When Johnson arrived around 10:30 p.m., L.L. went to her bedroom to get a can of marijuana to take into the living room so the two could smoke. Johnson entered L.L.'s bedroom and she attempted to get him to go to the living room. Johnson "threw her" on the bed, and grabbed her. He held her down by

3

her arms and began to pull down her pajama pants and underwear, which she repeatedly tried to pull back up. She said, "I'm serious, I'm serious, stop." She put her knees up and put her hand "on her vagina and * * * kind of used it as a barricade." Johnson eventually was able to insert his penis into her vagina, but lost his erection. He grabbed her hair and "forced [her] to give him oral for about 15 or 20 seconds" and again pushed her onto the bed and began having intercourse. She suffered pain during this incident and had bruises afterward.

{¶11} Following the assault, L.L. went into the bathroom and Johnson ran out of the apartment. L.L. noticed that he had taken the can of marijuana and her phone. She chased him through the parking lot, while wearing just her t-shirt, but was unable to catch him. She immediately went to the nearest police station.

{¶12} Regarding the marijuana, L.L. testified that she would occasionally sell it to friends but often would either smoke it herself or share with friends. At the time of the attack, she was working full-time and going to school part-time but afterwards had to quit school and was fired from her job.

{¶13} On cross-examination, Johnson admitted that during her initial interview with Mullenax she denied prior sexual contact between her and Johnson, although she later told Detective Ron Parmertor that she had prior oral sex with Johnson. She explained that she believed "sexual contact" meant only intercourse.

{¶14} Melissa Hickman, a sexual assault nurse examiner at Lake Health, noted that, when she first encountered L.L., she was "quiet, tearful, [and] physically shaken." Hickman collected evidence and noted a bruise on L.L.'s arm. She also collected a Kotex pad, which L.L. was wearing since she was menstruating.

4

**{¶15}** Kimberly Gibson, a forensic analyst at the Lake County Crime Laboratory, tested a vaginal swab since it was indicated L.L. was menstruating and confirmed the presence of blood on the swab.

**{¶16}** Dr. Karen Zavarella, a forensic analyst with the Lake County Crime Laboratory, testified that the major contributor to the DNA profile from sperm found on the vaginal and anal swabs was Johnson.

**{¶17}** Detective Ron Parmertor of the Willoughby Hills Police Department investigated this case. Initially, when L.L. was interviewed, she denied prior sexual contact with Johnson. After investigation, he was able to determine that L.L. had sent nude photographs through Snapchat and that Johnson had nude photos and videos of her on his phone.

**{¶18}** Parmertor stated that, after reviewing the records, it "was clear that she was having some type of intimate relationship with Mr. Johnson," so he discussed with her different types of sexual activity and explained them. She indicated that she did not think oral sex was part of "sexual contact" that was discussed during her initial interview.

**{¶19}** Prior to closing arguments, the court dismissed the Robbery charge due to insufficient evidence. At the conclusion of the trial, the court found Johnson guilty of Rape, Aggravated Burglary, and Burglary as charged in the Indictment. The verdict was memorialized in an August 18, 2016 Judgment Entry.

**{¶20}** A sentencing hearing was held on August 24, 2016. Johnson reiterated his innocence, expressed his intention to appeal, and requested the minimum possible sentence. The State asked that the court impose a ten-year sentence. It emphasized the trauma to the victim and that Johnson took advantage of their friendship.

5

**{¶21}** The court explained that there was "a divergent recollection of the facts," but stated that it had found L.L.'s version of events to be credible. It stated that it had considered the purposes and principles of sentencing and the R.C. 2929.12 factors, and noted that there had been a past relationship between the parties. The court found recidivism to be likely given Johnson's past felony and misdemeanor convictions. The court merged the Aggravated Burglary and Burglary convictions into the Rape conviction and sentenced Johnson to a term of nine years in prison. Johnson was also classified as a Tier III sex offender. A Judgment Entry of Sentence was filed on August 29, 2016, memorializing the sentence.

**{¶22}** Johnson timely appeals and raises the following assignments of error:

**{¶23}** "[1.] Appellant's convictions were against the manifest weight of the evidence.

**{¶24}** "[2.] Appellant's sentence was not supported by the record."

**{¶25}** In his first assignment of error, Johnson argues that the convictions were against the weight of the evidence based on several concerns with L.L.'s credibility and the conflicting versions of events. He contends that the evidence supports a finding that the sexual activity was consensual.

**{¶26}** Manifest weight of the evidence "addresses the evidence's effect of inducing belief." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive-- the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in

6

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶27} The primary issue is whether the Rape conviction is supported by the weight of the evidence since Johnson argues that the Rape was necessary to demonstrate the elements of inflicting harm and/or committing a criminal act for the purposes of Aggravated Burglary and Burglary.

{¶28} For the purposes of Rape, it was necessary to prove that Johnson "engage[d] in sexual conduct with another when [he] purposely compel[led] the other person to submit by force or threat of force." R.C. 2907.02(A)(2). L.L. testified that Johnson grabbed her hair and forced her to perform oral sex, as well as had sexual intercourse with her forcibly, although she asked him to stop and attempted to block him from doing so. Immediately after Johnson left, L.L. went to police and submitted to a sexual assault exam. The fact that sexual intercourse occurred was supported by DNA evidence.

{¶29} Johnson raises several arguments as to why L.L.'s testimony was inconsistent or lacking credibility. First, he emphasizes that she initially told police she had not previously had consensual sexual contact with L.L., although she later admitted that she had.[1] This alleged inconsistency, however, was explained at trial by L.L. and Detective Parmertor. When L.L. was initially questioned about "sexual contact," she did not understand that it encompassed oral sex. Parmertor had to explain the different

---

1. Activities such as vaginal and oral sex are "sexual conduct" for the purposes of sexual offenses under Revised Code Chapter 2907. R.C. 2907.01(A). "Sexual contact" was the term used by the prosecutor, Detective Parmertor, and L.L., although they were actually discussing instances of oral sex.

7

types of sexual activity to L.L. in a subsequent interview. Regardless, L.L. ultimately did inform police of her prior sexual activities with Johnson and testified to these at trial, giving the finder of fact a clear picture of the previous relationship between L.L. and Johnson. It is necessary to emphasize that, in relation to each of Johnson's arguments, "[w]itness credibility rests solely with the finder of fact, and an appellate court is not permitted to substitute its judgment for that of the fact-finder." *State v. Thompson*, 11th Dist. Portage No. 2015-P-0034, 2016-Ohio-5571, ¶ 20; *State v. Awan,* 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶30} Johnson also points to L.L.'s attempts to "downplay" their prior sexual activity and the nude photos she had sent him. L.L., at trial, was forthcoming with testimony about the prior relationship between the parties. Further, regardless of their prior relationship, it does not follow that she agreed to the sexual activity on the date in question, which she clearly testified was not consensual.

{¶31} L.L.'s contention that the sex was not consensual was also supported by additional evidence and testimony. In Snapchat messages sent before the rape, she told Johnson, who stated that he wanted to have sex: "I'm sorry I just don't want to do that anymore." She also testified that she did not want to have sexual intercourse on that night because she was menstruating and in pain, which was supported by the presence of blood in the swab taken as well as the fact that she had been wearing a pad when the sexual assault nurse examined her. Her mental state was confirmed by several individuals who interacted with her just following the attack, and she was described as "hysterical" and "crying."

**{¶32}** Johnson contends that the evidence corroborates his "alternate theory of the case," that he came to buy drugs, the two had sex, and L.L. claimed she was raped because Johnson stole her marijuana and phone. The evidence cited includes the fact that L.L. bought marijuana, sometimes sold marijuana, and that the theft of the marijuana impacted her financially, with her telling Mullenax that she may not be able to pay her rent because she "lost everything that [she] had" after this incident. The foregoing evidence, however, neither proves nor disproves the ultimate question: whether the sex was consensual. Again, the fact-finder ultimately determined that L.L.'s testimony as to this critical issue was truthful. The fact that L.L. may have had a motivation to lie does not mean the finder of fact was required to accept Johnson's "theory of the case."

**{¶33}** Johnson argues that the physical evidence suggests a consensual encounter, since there was limited physical injury. The record showed L.L. had a small cut and a few bruises. We emphasize that "a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury." *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46. L.L. did not testify that Johnson hit her or otherwise tried to injure her in a manner that would have created evident outward physical injuries. Further, while L.L. may have expressed uncertainty or confusion to police about whether she obtained the bruises during the Rape, this does not mean she was being untruthful.

**{¶34}** To the extent that Johnson references his version of events from a statement discussed during sentencing, this is irrelevant. It is not evidence that was

9

before the court in making a finding of guilt and thus cannot provide "context" for weighing the evidence.

{¶35} A review of the record, including L.L.'s testimony, which the trial court was entitled to find credible, as well as the testimony showing L.L.'s demeanor and acts following the assault, demonstrates that the Rape conviction was supported by the manifest weight of the evidence. Given that Johnson argues only that the remaining convictions were invalid because a rape did not occur, the foregoing analysis applies to these arguments as well.

{¶36} The first assignment of error is without merit.

{¶37} In his second assignment of error, Johnson disputes the trial court's weighing of pertinent sentencing factors.

{¶38} The standard of review for felony sentences is provided by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9-23. "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "Applying the plain language of R.C. 2953.08(G)(2), * * * an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum* at ¶ 1.

{¶39} As the Supreme Court of Ohio has held, R.C. 2929.12 does not require judicial fact-finding. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 42; *State v. Macko*, 11th Dist. Lake No. 2016-L-022, 2017-Ohio-253, ¶ 75. Under

10

R.C. 2929.12(B) and (C), the court must consider factors relating to whether "the offender's conduct is more serious than conduct normally constituting the offense," or "less serious than conduct normally constituting the offense." The court must also consider factors relating to whether the offender is "likely to commit future crimes." R.C. 2929.12(D) and (E).

**{¶40}** Johnson argues that the trial judge erred in weighing the seriousness factors by finding none of them to be applicable, since, pursuant to R.C. 2929.12(C)(4), there were "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." In making this argument, he contends that L.L.'s inconsistent testimony and evidence in support of his explanation of the events creates substantial grounds in mitigation.

**{¶41}** Johnson's arguments that L.L.'s version of events was inaccurate or inconsistent were necessarily rejected by the trial court. In fact, the court noted at the sentencing hearing that it found L.L.'s version to be credible. Given that the weight of the evidence supports Johnson's conviction, Johnson's argument would require this court to hold both that he was properly convicted of committing Rape but also that his version of the events was accurate, which would amount to a finding that he did not commit Rape. The trial court had no reason to find mitigating circumstances as to this issue or that any of the mitigating circumstances under R.C. 2929.12(C) were present. Further, the lack of physical evidence argued by Johnson here has been addressed above.

**{¶42}** Johnson also argues that, although he had past convictions, his criminal history included only property and drug-related offenses, not sex offenses. R.C.

11

2929.12(D)(2) allows the court to consider, as a factor showing the defendant is likely to commit future crimes, that "the offender has a history of criminal convictions." It does not specify that the offenses must be of the same type for which the defendant is presently convicted, nor does Johnson cite any authority for this proposition. The trial court properly weighed the criminal history in reaching its sentence, which includes several prior criminal offenses. It also considered other pertinent factors, including the impact on the victim. Given these factors, and for the reasons outlined above, we find no error in sentencing or in the court's consideration of the R.C. 2929.12 factors.

{¶43} The second assignment of error is without merit.

{¶44} For the foregoing reasons, Johnson's convictions and sentence in the Lake County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

12